**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 15 2005**

**PATRICK FISHER**
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BOARD OF COUNTY
COMMISSIONERS, FREMONT
COUNTY, COLORADO,

      Petitioner,

v.

UNITED STATES EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION,

      Respondent.

and

JAY JANSSEN,

      Intervenor.

No. 03-9566

---

**Petition for Review of an Equal Employment
Opportunity Commission Decision
(EEOC No. 11980024)**

---

Cathy Havener Greer, (L. Michael Brooks, Jr. with her on the brief), Wells, Anderson & Race LLC, Denver, Colorado for Petitioner.

Peter D. Keisler, Assistant Attorney General (Marleigh D. Dover, Stephanie R. Marcus, Attorneys, Appellate Staff Civil Division, Department of Justice, Lorraine C. Davis, Assistant General Counsel, Daniel T. Vail, Attorney, United States Equal Employment Opportunity Commission, with him on the brief), Washington, D.C. for Respondent.

Charlotte N. Sweeney, (Richard C. LaFond, with her on the brief), Lafond & Sweeney, L.L.C., Denver, Colorado for Intervenor.

---

Before **KELLY** , **HOLLOWAY,** and **LUCERO,** Circuit Judges.

---

**LUCERO** , Circuit Judge.

---

Jay Janssen, an employee of the Fremont County Board of County Commissioners ("Board"), filed an Equal Employment Opportunity Commission ("EEOC") complaint alleging that the Board retaliated against him for filing a prior EEOC complaint. Contending that the Government Employee Rights Act of 1991 ("GERA"), 42 U.S.C. §§ 2000e-16a, 2000e-16b, and 2000e-16c, does not protect employees from retaliation for exercising their rights under the Act, the Board seeks reversal of the EEOC's determination that it retaliated against Janssen. The Board argues that GERA clearly reflects congressional intent not to provide a right against retaliation, and that the EEOC's recognition of such a right violates the expressed will of Congress and the Tenth Amendment. The Board further argues that the EEOC erred in its determination that one of the Administrative Law Judge's ("ALJ") findings was not supported by substantial evidence. For the reasons set forth below, we exercise jurisdiction under 42 U.S.C. § 2000e-16c(c) and 28 U.S.C. § 2344 and **AFFIRM** the EEOC's final decision.

2

# I

In 1993 Janssen was appointed by the Board to a position in its Emergency Management Office. Although an appointee of the Board, he was supervised in matters of time, attendance, and budget by the County Finance Director who acted as the de facto County Administrator. While in this position, Janssen served the Board on the policymaking level, and was, therefore, protected by GERA, rather than Title VII.

Janssen was originally hired as a part time employee to prepare the County Emergency Management Plan, and his responsibilities grew when he became a full time employee in 1995. Although Janssen received overall satisfactory job ratings and salary increases from 1993 to 1995, the Board received numerous complaints concerning his interpersonal skills from various organizations with which he was required to interact in performing his job. Janssen also experienced interpersonal problems within the County government. Beginning in 1993, the Finance Director, Janssen's supervisor, developed an on-going intimate relationship with the Finance Department clerk. Because Janssen shared office space with the Finance Department in the County Courthouse and because he and the clerk did not get along, this intimate relationship contributed to problems within the office. When Janssen lodged complaints concerning the clerk with his supervisor, the Finance Director took no action to discipline the clerk for

3

anything she did to contribute to the office problems. Ultimately Janssen filed a complaint of third-party sexual harassment with the EEOC, claiming that he had suffered adverse employment conditions because he had complained internally of the ongoing relationship between the Finance clerk and his supervisor.

Immediately subsequent to its learning of the EEOC complaint in October 1996, the Board notified Janssen that they were converting the Emergency Management position into a contract position effective January 1997. Although Janssen submitted the lowest bid for this contract position he was not selected for an interview. In December, after an altercation with a custodian at the courthouse, the Board placed Janssen on administrative leave until his position terminated. As a consequence, Janssen filed two further charges of discrimination with the EEOC alleging that the Board placed him on leave and did not select him for the contract position in retaliation for filing his first EEOC complaint.

The EEOC referred all discrimination charges to an ALJ. After a hearing, the ALJ determined that the Board retaliated against Janssen for filing the initial charge of discrimination by: (1) placing him on administrative leave, and (2) not selecting him for the new contract position. Awarding back pay, attorney's fees and costs, and equitable relief, the ALJ declined to order reinstatement and non-pecuniary compensatory damages because she determined that Janssen had

4

"unclean hands." The ALJ deferred ruling on the Board's constitutional and statutory challenges.

Appeals to the EEOC followed. Central to the Board's appeal was its contention that GERA did not prohibit retaliation and construing it to do so violated the Tenth Amendment. The Board also contested the sufficiency of the evidence underlying the finding of retaliation. On cross-appeal, Janssen contended that the ALJ's denial of compensatory damages based on "unclean hands" was error. Because it interpreted § 2000e-16(b) to include a right against retaliation, the EEOC issued its final decision which rejected the Board's constitutional and statutory arguments. The EEOC also reversed the ALJ's determination that Janssen had "unclean hands," and awarded him $10,000 in non-pecuniary compensatory damages for emotional distress. This appeal ensued.

## II

GERA establishes our standard of review. We may set aside the EEOC's final order only if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law; (2) not made consistent with required procedures; or (3) unsupported by substantial evidence." § 2000e-16c(d).

## A

At the heart of this case is the interpretation of the Act. GERA provides protection against workplace discrimination to certain state employees who are

excluded from coverage under Title VII of the Civil Rights Act of 1964, § 2000-16a, 2000-16b, and 2000-16c.[1] Our review of the EEOC's interpretation of employment discrimination statutes is governed by <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-43 (1984). Applying <u>Chevron</u>'s two-step test, we first conduct a de novo review to determine whether the plain language of the applicable statutory provisions clearly demonstrates congressional intent. <u>Id.</u> at 842-43. If the statute is silent or ambiguous with respect to the specific issue before the court, we must determine "whether the agency's answer is based on a permissible construction of the statute." <u>Id.</u> at 843. As long as the interpretation is reasonable, we must defer to the agency's construction of the statute even though it may not conform with how we would interpret the statute in an original judicial proceeding. <u>Id</u>. at 843 n.11.

At issue in this appeal is whether § 2000e-16b(a)(1) of GERA encompasses protection against retaliation for employees exercising their rights under the Act. As the agency entrusted with administering the Act for state employees, the

---

[1] Title VII in pertinent part provides:
The term "employee" means an individual employed by an employer, except that the term "employee" shall <u>not include</u> any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.
42 U.S.C. § 2000e(f) (emphasis added).

6

EEOC has interpreted GERA to include such protection. However, the Board

argues that such a right is contrary to congressional intent. In 1991, Congress

enacted GERA, and extended protections against discrimination to previously

exempt state employees.[2] In so doing, Congress echoed the exclusionary language

of Title VII, specifically extending protections against discrimination based on

race, color, religion, sex, national origin, age, or disability to previously exempt

high-level state employees.[3]

When interpreting a statute, we start with the language of the statute itself.

The relevant section of § 2000e-16b(a) states: "[a]ll personnel actions affecting

. . . State employees described in section 2000e-16c of this title shall be made free

from any discrimination based on – (1) race, color, religion, sex, or national

---

[2] As originally enacted GERA protected employees of the Senate, certain employees of the Architect of the Capitol, presidential appointees, and previously exempt state employees. Pub. L. 102-166, §301 et seq., originally codified at 2 U.S.C. § 1201 et. seq. As originally enacted GERA had a separate provision against retaliation and intimidation applicable to Senate employees. In 1995, during the enactment of the Congressional Accountability Act, Congress repealed the majority of GERA's provisions applicable to Senate employees, reorganized its remaining provisions, and re-codified it in Title 42.

[3] GERA states:
[I]ndividual[s] chosen or appointed, by a person elected to public office in any State or political subdivision of any State by the qualified voters thereof – (1) to be a member of the elected official's personal staff; (2) to serve the elected official on the policy making level; or (3) to serve the elected official as an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.
§ 2000e-16c(a).

7

origin, <u>within the meaning of section 2000e-16 of this title</u>." § 2000e-16b(a)(1) (emphasis added). This quoted portion of the statute is silent as to retaliation, as is the remainder of GERA as currently enacted at § 2000e-16(a), 2000e-16(b), or 2000-16(c).

The EEOC has interpreted the underlined language of the statute to contain a right against retaliation because § 2000e-16 incorporates the provisions of 42 U.S.C. § 2000e-5(f)-(k), which in turn incorporates Title VII's anti-retaliatory provision contained in 42 U.S.C. § 2000e-5(g). The Board, however, argues that the language, "within the meaning of section 2000e-16 of this title" merely meant to incorporate the definition of the terms "race, color, religion, sex, or national origin" from § 2000e-16.

"Within the meaning of section 2000e-16 of this title" is subject to two differing interpretations, and neither it, nor GERA generally, unambiguously addresses retaliatory discrimination. Because the statute that the Board challenges is subject to differing interpretations, we will defer to the EEOC's interpretation provided it is reasonable; that is, "unless it is arbitrary, capricious, or manifestly contrary to the statute." <u>Chevron</u>, 467 U.S. at 844; <u>Pharmanex v. Shalala</u>, 221 F.3d 1151, 1154 (10th Cir. 2000).

We assume that Congress knows the law and legislates in light of federal court precedent. <u>See</u> <u>Cannon v. Univ. of Chicago</u>, 441 U.S. 677, 696-97 (1979);

8

Jurado-Gutierrez v. Greene, 190 F.3d 1135, 1146 (10th Cir. 1999). When Congress enacted GERA in 1991, it was well-settled that retaliation claims were actionable against the federal government under Title VII even though § 2000e-16 – the statute extending Title VII coverage to federal employees – did not specifically create a cause of action for retaliation. See, e.g., Ayon v. Sampson, 547 F.2d 446, 449-450 (9th Cir. 1976); Hale v. Marsh, 808 F.2d 616, 619 (7th Cir. 1986); Porter v. Adams, 639 F.2d 273, 278 (5th Cir. 1981); White v. Gen. Serv. Admin., 652 F.2d 913, 917 (9th Cir. 1981) (by drafting § 2000e-16 to prohibit "any discrimination," Congress intended to bar the federal government from engaging in all those forms of discrimination identified in sections 2000e-3 and 2000e-4 and others as well; therefore, any claims of retaliation are within the scope of Title VII); see also Hayes v. Shalala, 917 F.Supp. 4, 4-5 (D.D.C. 1995) ("42 U.S.C. § 2000e-16 consistently has been interpreted, both expressly and implicitly, by this and numerous other circuits to permit retaliation claims against the United States government") (citing cases). We have assumed the existence of a retaliatory claim under § 2000e-16 without directly deciding the issue. See, e.g., Mattioda v. White, 323 F.3d 1288, 1293 (10th Cir. 2003).

Relying on Ayon and Porter, the Fifth Circuit recently held that because § 2000e-16 bars retaliation and § 2000e-16b(a)(1) incorporates § 2000e-16, GERA makes retaliation, within the meaning of Title VII, unlawful. Brazoria

County v. EEOC, 391 F.3d 685 (5th Cir. 2004); see also Haddon v. Executive

Residence at the White House, 313 F.3d 1352, 1356-57 (Fed. Cir. 2002) ("It is

quite sensible to conclude that Congress intended for GERA's § 2000e-16b . . . to

include reprisal.").  The Supreme Court, in interpreting similar language under

Title IX, held that because retaliation against a person who speaks out against sex

discrimination is "intentional discrimination" "on the basis of sex," "retaliation

falls within the statute's prohibition of intentional discrimination on the basis of

sex."  Jackson v. Birmingham Bd. of Educ., 544 U.S. _ (2005), 2005 WL

701076, at 4, 9 (Mar. 29, 2005).

The EEOC contends that a broad interpretation of the statute furthers the

legislative goals of protecting state employees from discriminatory conduct and

has, in furtherance of its delegated authority, enacted formal regulations

evidencing this interpretation.  See 29 C.F.R. § 1603.102(a).[4]  Additional support

---

[4] GERA, § 2000e-16c, vests authority in the EEOC to adjudicate complaints of violations of the anti-discrimination provisions of GERA and to order appropriate relief.  It is under this authority that the EEOC promulgated regulations setting forth the administrative procedures for affected employees to file complaints under GERA.  The regulations state:  covered state employees under GERA,

> who believe they have been retaliated against on the basis of race, color, religion, sex, national origin, age, or disability or retaliated against for opposing any practice made unlawful by federal laws protecting equal employment opportunity, or for participating in any stage of administrative or judicial proceedings under federal laws protecting equal employment opportunity, may file a complaint not

(continued...)

10

for the EEOC's interpretation comes from GERA's legislative history. The House Judiciary Committee Report on the Civil Rights Act of 1991 states:

> [t]he Committee intends that . . . other laws modeled after Title VII be interpreted consistently in a manner consistent with Title VII as amended by this Act.

H. R. Rep. No. 102-40, reprinted in 1991 U.S.C.C.A.N. 694, 697. Because GERA is modeled after the language of Title VII, interpretation of § 2000e-16(b)(a)(1) to include prohibitions against retaliatory discrimination is consistent with judicial interpretations of Title VII, and supports the reasonableness of the EEOC's interpretation.

**B**

The Board contends that because the original terms of GERA contained a specific anti-retaliatory provision applying to congressional employees, Congress cannot have intended a broader right against retaliation to be included in GERA. Recognition that Congress included enhanced protections against retaliation and reprisal for certain Senate employees in GERA's original enactment does not compel the conclusion that the language of § 2000e-16b(a)(1) does not also

---

[4](...continued)
later than 180 days after the occurrence of the alleged discrimination. 29 C.F.R. § 1603.102(a).

include general protections against retaliation for exercising rights under the Act.[5]

Furthermore, the Board argues, the EEOC's interpretation of § 2000e-16(b)(a)(1) is unreasonable because it contradicts GERA's procedural provisions requiring the EEOC to adjudicate claims of discrimination under the Administrative Procedure Act ("APA"). This is because Title VII has its own elaborate procedural scheme, and if GERA incorporated all of § 2000e-16 by reference, the Board argues it would have necessarily incorporated Title VII's procedural provisions. The EEOC's interpretation is not contradictory, or unreasonable, to the extent the phrase "within the meaning of section 2000e-16 of this title" is seen to modify "discrimination," and thereby incorporates the substantive portions of Title VII and not the procedural provisions.

Because the language of the statute is ambiguous as to whether GERA protects against retaliation, under <u>Chevron</u> we defer to the EEOC's interpretation

---

[5] GERA's section 312 stated:

PROHIBITION OF INTIMIDATION. Any intimidation of, or reprisal against, any employee by any Member, officer, or employee of the Senate, or by the Architect of the Capitol, or anyone employed by the Architect of the Capitol, as the case may be, because of the exercise of a right under this title constitutes an unlawful employment practice, which may be remedied in the same manner under this title as is a violation.

Pub. L. 102-166, 105 Stat. 1071 (1991). GERA's § 312 was different in scope from Title VII's anti-retaliation provision, and precluded intimidation and reprisal by any Member, officer, or employee, rather than precluding retaliation only by employers as under Title VII.

12

unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law." Chevron, 467 U.S. at 844. After careful evaluation, we conclude that the EEOC's interpretation of GERA is reasonable and not contrary to GERA's purposes,[6] and therefore, we join our sister circuits in recognizing that § 2000e-16b(a)(1) of GERA includes protection against retaliation on the basis of race, color, religion, sex, or national origin, within the meaning of Title VII.

### III

We turn next to the Board's contention that by interpreting GERA to include a right against retaliation, and issuing 29 C.F.R. § 1603.102 to implement this interpretation, the EEOC impairs the right of state subdivisions to manage and oversee personnel matters within state governments, thereby contravening the Tenth Amendment's reservation to the states of powers not delegated to the United States. U.S. Const. amend. X. Although the Board does not contest congressional authority to provide a right against retaliation under GERA, the Board contends that the EEOC's interpretation of the statute in the face of congressional ambiguity contravenes the Tenth Amendment because Congress must make a plain statement of intent when its legislation affects a state's control

---

[6] Like Title VII, GERA is a broad remedial statute, and liberal definitions are similarly necessary to carry out its anti-discrimination and anti-retaliation purposes. See generally Hillig v. Rumsfeld, 381 F.3d 1028, 1032 (10th Cir. 2004).

13

over its officers and agents under Article I. See Gregory v. Ashcroft, 501 U.S. 452, 460-461 (1991).

We review constitutional challenges to a statute de novo. United States v. Bolton, 68 F.3d 396, 398 (10th Cir. 1995). As stated by the Supreme Court, the Tenth Amendment "is essentially a tautology" requiring us to determine "whether an incident of state sovereignty is protected by a limitation on Article I power." New York v. United States, 505 U.S. 144, 156-157 (1992); see also Kansas v. United States, 214 F.3d 1196, 1198 (10th Cir. 2000).

**A**

In Kansas we described the required Tenth Amendment analysis as follows: "[t]hese claims are essentially mirror images of each other: if the authority to act has been delegated by the Constitution to Congress, then it may act pursuant to Article I; if not, the power has been reserved to the states by the Tenth Amendment." Kansas, 214 F.3d at 1198. If Congress has authority under, for example, the Commerce Clause or section 5 of the Fourteenth Amendment, to pass a particular Act, we will not rule that the Act contravenes the Tenth Amendment. In addressing this issue in Fitzpatrick v. Bitzer, the Court stated:

> There can be no doubt that [our precedent] has sanctioned intrusions by Congress, acting under the Civil War Amendments, into the judicial, executive, and legislative spheres of autonomy previously reserved to the States. . . . When Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the

14

terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority.

427 U.S. 445, 455-456 (1976); see also City of Rome v. United States, 446 U.S. 156, 179 (1980). In Gregory, the Supreme Court reiterated that "the principles of federalism that constrain Congress' exercise of its Commerce Clause powers are attenuated when Congress acts pursuant to its powers to enforce the Civil War Amendments." 501 U.S. at 468. In analyzing whether Congress has acted pursuant to its Fourteenth Amendment powers, we have stated:

> The Supreme Court has admonished that we should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment. In heeding this admonition, we agree with the Sixth Circuit's conclusion that if Congress does not explicitly identify the source of its power as the Fourteenth Amendment, there must be something about the act connecting it to recognized Fourteenth Amendment aims before it is appropriate to characterize legislation as passed pursuant to the Fourteenth Amendment.

Aaron v. Kansas, 115 F.3d 813, 817 (10th Cir. 1997) (internal quotations and citations omitted).

Because Congress did not recite its purposes in legislating the specific provisions of GERA concerning state employees, we have scant legislative history to assist us in interpreting § 2000e-16b(a)(1).[7] However, because GERA's

---

[7] To ensure an Act's constitutionality, Congress need not recite the power that it undertakes to exercise; Congress is not required to state the words "section

(continued...)

15

language concerning previously exempt state employees is identical to that in Title VII's exclusion, we may accord substantial weight to the legislative history of the cognate Title VII provision in construing § 2000e-16b and 2000e-16c. See Gregory, 501 U.S. at 489 (Blackmun J., dissenting); see also Lorillard v. Pons, 434 U.S. 575, 584 (1978); Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985); Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756 (1979); EEOC v. Vermont, 904 F.2d 794, 798 (2d Cir. 1990).

"There is no dispute that in enacting the 1972 Amendments to Title VII to extend coverage to the States as employers, Congress exercised its power under s[ection] 5 of the Fourteenth Amendment."[8] Fitzpatrick, 427 U.S. at 453 n.9; see also H.R. Rep. No. 92-238, at 19 (1971). In the floor debates on the extension of

---

[7](...continued)
5" or "Fourteenth Amendment" or "equal protection," or expressly articulate its intent to legislate under § 5. EEOC v. Wyoming, 460 U.S. 226, 243 n.18 (1983).

[8] In debates, Senator Javits reemphasized the importance of the extension of Title VII protections to state and local government employees:

> . . . one of the greatest reforms in this bill is its applicability to those who are engaged in State and local government . . . If anybody, as a matter of morality, is entitled to equal employment opportunity, it is certainly these people; and the only way they can get it, because the authority so far as they are concerned is the State, is at the hands of the United States, under the 14th amendment, Section 5 of the 14th amendment, giving the power to Congress to enforce by appropriate legislation the provisions of this article . . . makes it mandatory, not discretionary, in terms of the highest morality, that we act affirmatively on this aspect of the bill.

118 Cong. Rec. 1840.

16

Title VII protections to state employees, Senator Ervin introduced an amendment to exempt those state employees who were chosen by elected officials or who were close personal advisors to elected officials.[9]  118 Cong. Rec 1677.  In the ensuing debates Senator Allen decried federal government encroachment on the powers of local government that would result.  See 118 Cong. Rec. 4096-4097, 4483, 4494.[10]  To accommodate these Tenth Amendment concerns, when Congress extended Title VII protections to state employees in 1972 it exempted high-level state employees in recognition of the federalism concerns encompassed in their inclusion.  It similarly rejected coverage for congressional employees at

---

[9] Substantial discussion of the legislative history underlying Congress' original exclusion of certain state employees from coverage under Title VII is included in Gregory v. Ashcroft, 501 U.S. at 487-494 (Blackmun, J. dissenting). H.R. Rep. No. 92-238, at 19 (1971) reiterates congressional concern with longstanding workplace discrimination by state governments.  1972 U.S.C.C.A.N. 2137, 2152-54.  See also 118 Cong. Rec. 1676-1679, 1837-1840, 4096-4097, 4483-4487,4492-4495, 7567-7569.

[10] Senator Allen stated:
We should not put the employees of the States, counties, and cities under the EEOC without at the same time making the provisions of the law applicable also to the employees of both Houses of Congress and the various offices of both Houses of Congress and the employees of the Members of both Houses.  If it is so good for the States, why should it not be equally good for the employees of the Senate, employees of the House of Representatives, employees of the Members of the Senate, and employees of the Members of the House. Mr. President, I do not feel that the law should be applicable to the States, counties, and cities, and I feel that this is just another instance of the further encroachment by the Federal Government on the powers of local government.
118 Cong. Rec. 4494.

17

that time.

Eighteen years later, GERA was passed as a portion of the Civil Rights Act of 1991 in which Congress sought to extend Title VII-type protections against employment discrimination to classes of employees who were previously unprotected – specifically, previously exempt state employees, presidential appointees, and Senate employees. Although Congress did not explicitly state that it was acting under authority of § 5 of the Fourteenth Amendment in enacting GERA, GERA was the last step in the sequence of broadening Title VII to provide protections to state employees, the intermediate steps of which were explicitly stated by Congress to be based on its Fourteenth Amendment powers. See 118 Cong. Rec. 1676-1679, 1837-1840, 4096-4097, 4483-4487, 4492-4495, 7567-7569. GERA was also the first step in providing these same protections to congressional employees. Less then five years later, Congress passed the Congressional Accountability Act of 1995 ("CAA"), again expanding protections for congressional employees by covering both House and Senate employees. Pub. L. 104-1.[11]

In passing the 1972 Title VII amendments and continuing through GERA as part of the Civil Rights Act of 1991, Congress provided an expanding class of

_____

[11] As a result those portions of GERA covering Senate employees were repealed, leaving GERA to cover presidential appointees and previously exempt state employees. Pub. L. 104-1, § 504.

18

state employees with what Congress found were necessary protections from discrimination.[12] This history of expanding protections for state employees clearly connects GERA "to recognized Fourteenth Amendment aims." See Aaron, 115 F.3d at 817. Despite the lack of direct legislative history on GERA, § 2000e-16b(a)(1) is the result of a continuing congressional expansion of protections for state employees against racial and gender discrimination, the origins of which were expressly enacted pursuant to Congress's § 5 authority.[13] Because of this long history and the close relationship between GERA and Title VII, we conclude that § 2000e-16b(a)(1) was enacted under Congress's § 5 authority.

---

[12] In H.R. Rep. No. 92-238, at 19 (1971), Congress discussed that: widespread discrimination against minorities exists in State and local government employment, and that the existence of this discrimination is perpetuated by the presence of both institutional and overt discriminatory practices. . . . and that employment discrimination in State and local governments is more pervasive than in the private sector. . . . The expansion of Title VII coverage to State and local government employment is firmly embodied in the principles of the Constitution of the United States. The Constitution has recognized that it is inimical to the democratic form of government to allow the existence of discrimination in those bureaucratic systems which most directly affect the daily interactions of this Nation's citizens. The clear intention of the Constitution, embodied in the Thirteenth and Fourteenth Amendments, is to prohibit all forms of discrimination. Reprinted in 1972 U.S.C.C.A.N. 2137, 2154.

[13] Additionally, Title VII's protections against retaliation for complaints of sex discrimination have been held to be proper legislation under § 5. See Crumpacker v. Kansas Dept. of Human Resources, 338 F.3d 1163, 1172 (10th Cir. 2003).

**B**

Gregory is relied upon by the Board to support the proposition that a plain statement of Congress's intent is required to subject the states to retaliation claims under § 2000e-16b(a)(1). However, the plain statement rule does not apply in interpreting § 2000e-16b(a)(1) because the Fourteenth and Fifteenth Amendments have already altered the constitutional balance of federal and state powers. Plain statements are required to clarify Congress's intent to alter the balance when legislating under the Commerce Clause, a showing not necessary when it is acting under the Fourteenth and Fifteenth Amendments. The Court has recognized this distinction between legislation enacted under Congress's power to enforce the Civil War Amendments from legislation enacted under other sources of authority. Gregory, 501 U.S. at 468;[14] see also Fitzpatrick 427 U.S. at 456.[15]

_____

[14] Additionally other circuits have held that Gregory applies only to cases involving federal interference with the qualification of constitutional officers. See, e.g., EEOC v. Massachusetts, 987 F.2d 64, 68-69 (1st Cir. 1993) (Gregory applies only when federal law interferes with state's definition of policy-making officials' qualifications); Tranello v. Frey, 962 F.2d 244, 249-250 (2d Cir. 1992) (same); Associated Builders & Contractors v. Perry, 817 F.Supp. 49, 53 n.3 (E.D.Mich. 1992) (same). GERA's prohibition against retaliatory discrimination is not such an interference.

[15] In [section 5] Congress is expressly granted authority to enforce 'by appropriate legislation' the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority. When Congress acts pursuant to s. 5, not only

(continued...)

20

A mirror image of our conclusion that Congress enacted § 2000e-16b(a)(1) under its Fourteenth Amendment § 5 authority is that the power at issue has not been reserved to the states by the Tenth Amendment. See Kansas, 214 F.3d at 1198. Because the statute itself does not violate the Tenth Amendment, the EEOC's implementing regulations which further congressional intent in GERA to protect against retaliatory discrimination are similarly valid.

**IV**

Finally, the Board contends that the ALJ's finding of "unclean hands" on Janssen's part was supported by substantial evidence, and challenges the EEOC's ruling to the contrary. Under § 2000e-16c(d), we may set aside the EEOC's final order on this issue only if the order itself was unsupported by substantial evidence. In making this determination, we review the whole record or those parts of it cited by a party. § 2000e-16c(d).

---

[15](...continued)

> is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority. We think that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts.

Fitzpatrick, 427 U.S. at 456.

Substantial evidence "requires more than a scintilla but less than a preponderance" and is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker." United States Cellular Tel. of Greater Tulsa v. City of Broken Arrow, 340 F.3d 1122, 1133 (10th Cir. 2003) (internal quotations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Id.

At issue here is the EEOC's determination that the ALJ's finding – that Janssen had filed his October 1996 complaint with the EEOC in bad faith – was not supported by substantial evidence. The ALJ found that:

> While [Janssen] would normally be entitled to compensatory damages because of his [emotional] distress, because he did not have "clean-hands" in this matter, compensatory damages will not be awarded. . . . There is evidence in the record that demonstrates that Mr. Janssen played the EEOC "card", i.e. he filed an EEOC complaint against the County and then informed his co-workers of what he had done noting that the County could not touch him now. . . . In order to gain leverage against the County in this situation, the Complainant filed the EEOC complaint. Indeed, I specifically find that the Complainant did not file the Complaint to remedy the "third-party sexual harassment," but to force the County to maintain his full-time employee status as the Director of Emergency Management. This ploy backfired on the Complainant. Consequently, Mr. Janssen is not entitled to reinstatement because he himself acted in bad faith.

In its final order the EEOC examined the testimony relied upon by the ALJ in reaching this conclusion, and determined that her conclusion was unsupported

by substantial evidence.  Although the EEOC noted that the ALJ primarily based her finding of "unclean hands" on hearsay testimony that the complainant told two employees that no adverse action could be taken against him now that he had filed an EEO complaint,[16] the EEOC then went further, stating:  "assuming arguendo that complainant made the statement attributed to him, the statement is insufficient evidence to support the ALJ's factual finding that complainant filed his October 1996 EEO complaint in bad faith."  The Board does not contest either the existence of Janssen's emotional distress or the amount of non-pecuniary damages awarded by the EEOC, but merely that the EEOC's determination of these issues "necessarily implicates the credibility and demeanor of witnesses, particularly that of Janssen himself."[17]  We disagree.

---

[16] One of the Commissioners testified he had been told that the complainant told two employees that no adverse action could be taken against him now that he had filed an EEO complaint.  During his testimony, Janssen denied making such a statement, and the parties point to no other evidence offered on this matter.

[17] The Board focuses on the ALJ's determination that it could not be determined whether the conversion of Janssen's job from full to part-time, and eventually to a contract position was the result of the Finance Director's actions, and that the record did not reflect the extent of damages caused to Janssen.  This argument is inapposite.  The retaliatory actions properly characterized by the EEOC were, instead, the retaliatory placement on administrative leave, and retaliatory non-selection for the newly created contract position, actions taken by the Board.  We conclude that the EEOC's determination that Janssen suffered emotional distress as a result of these actions, and its consequent award of non-pecuniary compensatory damages are supported in the record.  As we discuss below, we review the final agency decision, not that of the ALJ.

23

Our task in this situation is to review the decision of the agency, and not that of the ALJ. We proceed to consider whether the findings of the agency are supported by substantial evidence. See Fierro v. Bowen 798 F.2d 1351, 1355 (10th Cir. 1986).

Although the Board contends that where an agency has overruled an ALJ's credibility determination, appellate courts apply "heightened scrutiny" to decide whether the reasons offered by the agency are supported by the record, Aylett v. Sec. of Housing and Urban Dev., 54 F.3d 1560, 1561 (10th Cir. 1995), the EEOC did not overrule the ALJ's credibility determination here. In its final order the EEOC assumed that the alleged statements were in fact made by Janssen, but concluded, after review of the record, that the statements were insufficient to establish bad faith on the part of Janssen in filing his initial EEOC complaint. Having reviewed the relevant portions of the record, we agree.

In Crumpacker we recognized that Title VII permits employees to maintain retaliation claims based on a reasonable good-faith belief that the underlying conduct violated Title VII. This empowers employees to report what they reasonably believe is discriminatory conduct without fear of reprisal. 338 F.3d at 1172. Thus, the issue is not Janssen's subjective reasons for filing his original complaint of "third-party sexual harassment" with the EEOC, but rather, whether he had a reasonable good faith belief that the conduct complained of violated

24

Title VII. Janssen's alleged post-filing statements may be probative of this question, but, standing alone, they do not amount to substantial evidence supporting a finding of bad faith as to Janssen's belief that the complained of conduct violated Title VII.

In summary, we conclude that GERA includes a right against retaliatory discrimination under § 2000e-16b(a)(1), and that neither the statute nor its implementing regulations contravene the Tenth Amendment. Further, we conclude that the EEOC's determination on the issues of "unclean hands" and non-pecuniary damages for emotional distress are supported by substantial evidence in the record. Accordingly, we **AFFIRM** the EEOC's final decision and its award of compensatory non-pecuniary damages for emotional distress.