F I L E D
United States Court of Appeals
Tenth Circuit

MAY 28 2004

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SANFORD LEE HERTZ,

        Plaintiff - Appellee,

v.

LUZENAC AMERICA, INC., a
Colorado corporation,

        Defendant - Appellant.

No. 02-1488

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 99-N-417 (CBS))

---

Dale R. Harris of Davis Graham & Stubbs LLP (Andrew M. Low, Janet A.
Savage, Emily Hobbs-Wright, and Vinineath Nuon Gopal, with him on the briefs),
Denver, Colorado, for Defendant - Appellant.

Blain D. Myhre of Isaacson, Rosenbaum, Woods & Levy, P.C. (Theresa L.
Corrada, with him on the brief), Denver, Colorado, for Plaintiff - Appellee.

---

Before **LUCERO** , **McKAY** , and **HARTZ** , Circuit Judges.

---

**HARTZ** , Circuit Judge.

---

Luzenac America, Inc. (Employer), dismissed Sanford Lee Hertz from his position as a technical manager. Hertz filed suit in Colorado federal district court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, claiming that Employer had engaged in religious discrimination and had retaliated against him for protesting the discrimination. Although Hertz failed to convince the jury of the merits of his discrimination claim, it granted him compensatory damages on his retaliation claim.

To succeed in a Title VII retaliation claim against an employer, a plaintiff must show that "(1) the plaintiff engaged in protected opposition to discrimination; (2) the plaintiff suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (internal brackets and quotation marks omitted). Protected opposition can range from filing formal charges to voicing informal complaints to superiors. *See Robbins v. Jefferson County Sch. Dist. R-1*, 186 F.3d 1253, 1258 (10th Cir. 1999). A plaintiff need not convince the jury that his employer had actually discriminated against him; he need only show that when he engaged in protected opposition, he had a reasonable good-faith belief that the opposed behavior was discriminatory. *See Crumpacker v. Kansas Dep't of Human Res.*, 338 F.3d 1163, 1172 (10th Cir. 2003).

On appeal Employer complains of three rulings by the district court. One ruling was the refusal to admit into evidence a memorandum of a meeting between Hertz and his supervisor, which Employer contends was admissible under the business-records exception to the hearsay rule, Fed. R. Evid. 803(6). The other two rulings were refusals to give jury instructions requested by Employer. One proposed instruction would have told the jury that unreasonable opposition to allegedly discriminatory conduct is not protected activity under Title VII; the other would have told the jury that an employer cannot be liable for retaliation if it did not know that the employee had engaged in protected activity.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. The district court did not abuse its discretion in refusing to admit the meeting memorandum into evidence or in refusing to give the proposed instructions.

## I. FACTUAL BACKGROUND

Hertz, a Jewish male, testified that his supervisor, Ken Loritsch, made several anti-Semitic comments to him over the course of his employment, culminating in a particularly hostile exchange at a January 7, 1998, meeting between the two. According to Hertz, he ended the exchange by indicating to Loritsch that he intended to take action to end the alleged discrimination. For doing so, Hertz claims, Loritsch terminated him, in violation of Title VII's anti-retaliation provision, 42 U.S.C. § 2000-e3(a).

About four months before that meeting, Hertz had received a notice of performance deficiency from Loritsch. The notice focused on Hertz's inability to work effectively with others. Loritsch testified that he called the January 7 meeting to discuss Hertz's failure to follow Loritsch's direct order to allow a subordinate, Todd Yonker, to work directly with Jean-Pierre Grange, a vice president in their parent company. Hertz testified that the meeting came about informally, but for largely the same reason—that immediately after a meeting of Loritsch, Yonker, and Hertz (at which they discussed whether Yonker could work with Grange), Loritsch followed Hertz into his office and said "we need to talk about this." Aplt. App. at 698.

When the two were alone, Loritsch repeated that Hertz needed to let his subordinates work directly with Grange. Hertz testified that Loritsch told him Grange would not respond to him because he was "tainted." *Id*. at 700. When Hertz asked what being "tainted" meant, Loritsch leaned over and said, "Let my people go," *id*., which Hertz took as a reference to the Jewish Exodus. Hertz testified as follows:

> And I was outraged. And I just sprang to my feet. [Loritsch] was startled, and he immediately apologized. He said, I'm sorry, I apologize. I should not have brought your religion into it.

> And I said, That's it. You're done. I'm through with your harassment. I just said, You're done.

> . . . .

-4-

He apologized again. He said, That was terribly unprofessional. And I said, Yes, it is. And I said, You're done. And he bolted out the door, and I yelled very loud, You're done.

*Id.*

Loritsch, on the other hand, testified that the meeting was "calm" and "subdued." *Id.* at 1417. He said that he had not used the word "tainted," *id.* at 1422, and rather than saying "Let my people go," he had really said "Let your people go work with Jean-Pierre [Grange]." *Id.* at 1094. Loritsch testified that Hertz never raised his voice or yelled anything along the lines of "You're done" or "I'm not taking this anymore." *Id*. at 1421. Two days later Loritsch wrote a memo of the meeting, which made no mention of any outbursts by Hertz or allegations of religious discrimination. The memo, which is the subject of Employer's first issue on appeal, was not admitted at trial.

Loritsch terminated Hertz's employment, effective January 21, 1998. The dismissal notice said he was being terminated "due to performance problems." *Id.* at 718. Loritsch testified that he was motivated by Hertz's failure to work closely with Grange, among "many" problems that Loritsch felt had been building for some time. *Id.* at 1422.

## II. DISCUSSION

### A. Admissibility of Meeting Memo

Employer argues that the district court erred in refusing to admit into evidence Loritsch's memo of the January 7, 1998, meeting. We review evidentiary rulings for abuse of discretion. *See Abuan v. Level 3 Communications*, 353 F. 3d 1158, 1171 (10th Cir. 2003). Our review "is especially deferential with respect to rulings on the admission of hearsay evidence." *Id.* Also, we "will affirm the rulings of the lower court on any ground that finds support in the record, even where the lower court reached its conclusions from a different or even erroneous course of reasoning." *Id.* at n.3 (internal quotation marks omitted).

Federal Rule of Evidence 803(6) provides an exception to the hearsay rule for:

> Records of Regularly Conducted Activity.--A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. . . .

To fall within this exception, a document must (1) "have been prepared in the normal course of business; (2) . . . have been made at or near the time of the events it records; and (3) . . . be based on the personal knowledge of the entrant or of an informant who had a business duty to transmit the information to the

entrant." 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 803.08[1], at 803-56 (2d ed. 2002) (cross references omitted). "To have been prepared 'in the normal course of business,' the memorandum must have been made in the regular course of business of a regularly conducted business activity; and it must have been the regular practice of that business to have made the memorandum." *Id.*; *see Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1090 (10th Cir. 2001). Even if a document is found to meet all three requirements, it can be excluded if the "source of information or the method or circumstances of preparation" make it untrustworthy. Fed. R. Evid. 803(6).

Employer first tried to introduce the memo into evidence on cross-examination of Loritsch after Hertz called him to the stand in his case-in-chief. The sole foundation for admission was the following testimony by Loritsch during questioning by Employer:

Q.   And can you identify for us, please, what Exhibit 165 is.

A.   These are my handwritten notes regarding a meeting with Lee Hertz on January 7.

Q.   And why did you keep these--why did you take these notes?

A.   I think at the time I wrote those notes, I had decided that Lee was not going to be a member of the team anymore, to document that, so I

could give Barry [Nelson, Employer's director of human resources,] something to help communicate to Barry what the issues were.

Q. Did you take these notes in the normal course of your business?

A. Yes.

Q. And do these notes accurately reflect the conversation that you had with Mr. Hertz in January 7 of 1998?

A. Yes.

Aplt. App. at 1129. Hertz objected that the memo was inadmissible as hearsay. The district court sustained the objection, observing that the memo was "prepared because [Loritsch] thought he was going to fire [Hertz] . . . . This is not a business document." *Id.* The ruling was clearly proper because there was no evidence that it was the regular practice of Employer for such a memo to be prepared. *See Echo Acceptance Corp.,* 267 F.3d at 1090.

Employer again tried to introduce the memo when it called Loritsch to the stand. This time Employer presented a better foundation for admissibility, eliciting the following testimony from Loritsch:

Q. . . . Did you keep notes of that [January 7, 1998,] meeting?

A. Yes, I did.

Q. . . . Are these the notes that you kept of that meeting, Mr. Loritsch?

A. Yes.

Q. Did you keep these notes in the regular course of business?

A. Yes.

Q. And what did you do with these notes after you kept them?

A. I sent these – these notes to Barry Nelson.

Q. And why did you send them to Mr. Nelson?

A. At that point I had taken some time to think about what to do about the comments of that meeting and the direction that we were going. And at that time I decided it was time to terminate [Hertz].

Q. *Okay. And was it your regular practice to keep notes when you were dealing with employee issues, such as the ones reflected in here?*

A. *Yes.*

Q. And do the notes accurately reflect the content of the meeting that you had with Mr. Hertz on January 7, 1998?

A. Yes.

Q. And can you tell us, please, how long after January 7 you wrote these notes.

A. I think it was a couple of days. There is a date on the bottom, as I recall.

Q. Take a look at the bottom, please.

A. January the 9th, two days later.

Aplt. App. at 1418–19 (emphasis added).  The question and answer emphasized above, however, appear somewhat inconsistent with earlier testimony by Loritsch concerning his practice with respect to preparing notes.  On direct examination by Hertz during Hertz's case-in-chief, the following exchange occurred:

Q.     After January 8, you decide to fire Mr. Hertz, yes or no?

A.     That's correct.

Q.     Now, there is no written notice or memo you do, is there?

A.     I recall talking to Barry Nelson, our HR director, about that.

Q.     Is there a written notice or memo?

A.     Not from me.

Q.     It's your practice to write these things up, isn't it?

A.     No, typically, I don't write things up.

*Id*. at 1095–96.  Although Employer's brief on appeal provides a quite reasonable way to reconcile Loritsch's two answers, no attempt at reconciliation was offered the district court.  The district court sustained without any comment Hertz's objection that the memo was inadmissible hearsay.

Employer later buttressed Loritsch's foundation testimony.  Human Resource Director Nelson testified that he had instructed Loritsch that "any time that [the company was] dealing with serious performance issues," it was "appropriate [for Loritsch] to make certain that there is documentation about what

-10-

[he] discuss[ed], to follow up the meeting, to make certain he had [a] record of what was discussed during the meeting." *Id.* at 1542. Yet Employer made no further attempt to introduce the memo into evidence.

On appeal Employer argues that it established at trial, through Loritsch's testimony, that the Loritsch memo was admissible. It further points to the confirming testimony by Nelson.

We are not persuaded. To begin with, we will not consider Nelson's testimony, which came after the district court's final ruling on the memo. We do not impose on trial judges the distracting burden of sua sponte reconsidering all prior evidentiary rulings as new evidence is introduced. Judges have enough to keep their minds occupied during trial without having to carry out this additional chore. As a reviewing court, we may only "evaluate the trial court's decision from its perspective when it had to rule and not indulge in review by hindsight." *Old Chief v. United States*, 519 U.S. 172, 182 n.6 (1997). A party that thinks additional evidence calls for reconsideration of a prior evidentiary ruling must therefore raise the matter with the trial judge after the new evidence is admitted. *Cf. United States v. Harrison*, 296 F3d 994, 1002 (10th Cir. 2002) (when objection to admissibility of evidence was originally made through motion in limine, "[i]n the event of . . . new evidence . . . , the opponent has the duty to bring the matter to the attention of the district court by renewing the objection").

Here, Employer made no attempt to reoffer the memo into evidence during or after Nelson's testimony.

Viewing the evidence as it appeared when the district court ruled, we hold that the court was not compelled to believe that it was the ordinary course of business for Loritsch to prepare such a memo. The only evidence supporting such a finding was a one-word answer - "Yes" - to an artfully phrased question—"[W]as it your regular practice to keep notes when you were dealing with employee issues, such as the ones reflected in here?" Aplt. App. at 1418. We recognize that such questioning is common in perfunctorily establishing the foundation for the admission of documentary evidence. But this was counsel's second attempt to get the notes into evidence, after Loritsch had testified, "No, typically, I don't write [these] things up." *Id.* at 1096. A reasonable judge could find that a necessary element of the business-records exception had not been established.

Moreover, the district court may have thought that the circumstances under which the memo was created made it untrustworthy. We have identified several factors that relate to trustworthiness: (1) the business significance of the document outside the litigation context, (2) the level of experience of the preparer in creating such documents, and (3) the neutrality of the preparer. *See United States v. Frazier*, 53 F.3d 1105, 1110 (10th Cir. 1995). When it excluded

the memo the first time, the district court observed that it was "prepared because [Loritsch] thought he was going to fire [Hertz] . . . ." Aplt. App. at 1129. Employer argues:

> Merely because Loritsch was considering whether to recommend terminating Hertz's employment is no reason to exclude the document as untrustworthy. If it were, employers' notes and memoranda concerning their grounds for termination would be routinely inadmissible and not, as the cases show, routinely admissible.

Aplt. Br. at 21–22. But this argument ignores the relevance of other factors that will inform the trial judge's exercise of discretion. The district court may well have believed that the chief purpose for preparing the memo was to protect against a discrimination claim by Hertz. We note that courts have properly refused to admit purported business records because they were prepared in anticipation of litigation. *See Timberlake Construction Co. v. United States Fid. & Guar. Co.*, 71 F.3d 335, 341–43 (10th Cir. 1995). The nature of the memo, the timing of its preparation (two days after the event), and the less-than-definitive testimony by Loritsch regarding his practice in preparing such memos, all convince us that the district court would not have abused its discretion in finding the memo untrustworthy.

We recognize that the district court did not express any reasons for its second ruling denying admission of the memo, and its comment at the first ruling was not tied to a specific provision of Rule 803(6). Nevertheless, when, as here,

the record supports a proper ground for an evidentiary ruling, we will not speculate that the district court must have based its ruling on a different, erroneous ground. The burden falls on the objecting party to obtain clarification from the district court if that party believes that the court has ruled on an improper basis.

Employer complains that the district court's ruling was inconsistent with its ruling admitting Loritsch's memo of a different meeting with Hertz—one that occurred on October 29, 1997, to discuss what progress Hertz had made in improving working relationships with others. Employer does not explain, however, why such alleged inconsistency in itself creates error. Perhaps Employer was simply fortunate that the other memo was admitted. We note that when the district court admitted that memo, it said, "This is close enough." Aplt. App. at 1405. When the court later ruled on the January memo, it may have found that additional concerns altered the balance of considerations just enough to warrant exclusion. This was not an occasion when a court treated one party worse than another, setting a higher bar to admission of evidence for one than for the other. A party that benefitted from the court's bending in that party's favor in admitting evidence cannot complain that the court later resumed an erect posture.

Employer also argues for reversal on the ground that it was prejudiced by the district court's remark upon rejecting the first proffer of the January memo:

"[The memo was] prepared because he thought he was going to fire him, so the objection is sustained. This is not a business document." Aplt. App. at 1129. Employer contends that the comment reflected adversely on Loritsch's credibility. Concerns about such remarks argue for courts not explaining evidentiary rulings in front of the jury. But we see little chance of prejudice here. There was no reversible error.

## B. Proffered Instruction on Reasonableness of Opposition

Employer contends that the district court erred in declining to give a jury instruction on a reasonableness-of-opposition defense to Hertz's retaliation claim. Employer proffered an instruction containing the sentence, "Unreasonable conduct does not constitute protected activity." Aplt. App. at 330. Under this proposed instruction, if Hertz's complaint to Loritsch had been conveyed in an unreasonable way, retaliation by Employer would not have violated Title VII.

Employer relies on the test set forth in *Rollins v. Florida Department of Law Enforcement*, 868 F.2d 397, 401 (11th Cir. 1989), which directs that "reasonableness" of an employee's conduct be determined "on a case by case basis by balancing the purpose of [Title VII] and the need to protect individuals asserting their rights thereunder against an employer's legitimate demands for loyalty, cooperation and a generally productive work environment." Given this test, it urges, the jury could have found Hertz's response to Loritsch to have been

-15-

"intimidating and disruptive" and therefore "unreasonable." Aplt. Br. at 26. It

points to Hertz's testimony that after Loritsch "bolted out the door" of Hertz's

office, Hertz yelled at him "very loud" through the office door down the hall.

Aplt. App. at 700. According to Employer, "[I]t was unreasonable for Hertz to

express opposition to perceived anti-Semitism by losing his temper and shouting

at his superior, especially when Hertz concedes that other employees nearby heard

his shouting." Reply Br. at 18.

The leading case on the issue in this circuit is *Robbins v. Jefferson County*

*School District R-1*, 186 F.3d 1253 (10th Cir. 1999). The plaintiff in *Robbins* was

a secretary employed by the defendant school district. In response to allegedly

discriminatory conduct, the plaintiff

> lodged frequent, voluminous, and sometimes specious complaints and
> engaged in antagonistic behavior toward her superiors. The record
> reveals that, during the relevant time period, she (1) challenged [an]
> Assistant Superintendent['s] . . . decision to deny her union
> grievance; (2) accused [her supervisor] of slander, malicious intent,
> and untruthfulness; (3) questioned [her supervisor's] temporary
> delegation of authority to [a female co-worker]; (4) complained that
> [another] Assistant Superintendent['s] response to her grievances
> "contained false statements, and dripped with hostility and bias"; (5)
> called [an administrator] a "puppet"; and (6) accused the School
> District and specific individuals of intending to "cover up for . . .
> inappropriate actions taken by Risk Management administrators."

*Id.* at 1259 (citations omitted). After quoting the *Rollins* balancing test for

reasonableness, we "[b]alanc[ed] the purpose of Title VII against the barrage of

inflammatory memoranda [the plaintiff] wrote, often bypassing her immediate

-16-

superiors to complain to the assistant superintendent and even school board members" and held "that, as a matter of law, these activities were not reasonable and did not constitute protected opposition." *Id.* at 1260.

In the case before us now, the district court rejected the proffered instruction, calling *Robbins* "an extreme case about an employee who was disruptive over a period of time and whose disruption was much more serious than [that of Hertz] . . . ." Aplt. App. at 1636. "We review for abuse of discretion a district court's decision not to give a tendered jury instruction." *Quigley v. Rosenthal*, 327 F.3d 1044, 1062 (10th Cir. 2003). The district court's implicit ruling that Employer had not presented sufficient evidence to justify the proposed instruction was not an abuse of discretion.

Although a party may be "entitled to an instruction based on its theory of the case if it has produced appropriate evidence to support it," *Woolard v. JLG Industries*, 210 F.3d 1158, 1177 (10th Cir. 2000), Employer did not do so here. Because the jury rendered its verdict in favor of Hertz on the retaliation claim, we must assume that Hertz's outburst constituted a protest against perceived discrimination. Even viewing that outburst in the light most supportive of the proffered instruction, it was nevertheless a solitary event (there was no other allegedly protected activity) that does not reach the threshold of unreasonableness necessary to deprive him of the protections of Title VII. An emotional response

-17-

to a racial or religious epithet is a most natural human reaction. It would be ironic, if not absurd, to hold that one loses the protection of an antidiscrimination statute if one gets visibly (or audibly) upset about discriminatory conduct. Of course, there are limits. Actions accompanying an emotional outburst cannot be unchecked. But there is absolutely no evidence in this record that Hertz's exclamations from his office caused any injury to Employer's interests. Would that the rest of humanity could match the admirable (or perhaps not so admirable) self-restraint Employer recommends in accepting the unacceptable. To be sure, Loritsch's comments may not have been as offensive as some. But the nature of those comments relates to whether Hertz could reasonably believe he was the victim of discrimination, *see Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (dismissing retaliation claim when "[n]o reasonable person could have believed that the . . . incident [complained of] . . . violated Title VII's standard "), not whether his response (assuming the reasonableness of the belief) was reasonable. The district court properly rejected the proffered instruction.

## C. Proffered Instruction on Knowledge of Protected Activity

Employer urges that the district court erred in declining to submit a knowledge-of-protected-activity instruction to the jury. Employer proffered the following instruction relating to the causation element of a retaliation claim:

> A causal connection does not exist if the person who instigated the adverse employment action against the Plaintiff did not know of the

employee's engagement in the protected activity. Therefore, if you find that Defendant took adverse actions against the Plaintiff without knowing that Plaintiff had complained of discrimination, you must enter a verdict in favor of Defendant on Plaintiff's retaliation claim.

Aplt. App. at 331. The district court rejected the proffer, stating: "You can certainly argue that, but I won't. By that I mean, you can argue it to the jury, but I won't do it for you." *Id.* at 1641.

We agree that the proposed instruction is founded on a correct understanding of the law. Upholding a summary judgment in *Petersen*, 301 F.3d at 1189, we held that "retaliation . . . would be prohibited by [42 U.S.C.] § 2000e-3(a) only if the superior retaliating against [a Title VII plaintiff] knew that [the plaintiff's] opposition . . . was motivated by a belief that [the offending party] was engaging in racial or religious discrimination." Nevertheless, a party is not entitled to a specific jury instruction on every correct proposition of law. When the other instructions establish a sound basis for an argument by the party to the jury on that proposition, an additional instruction is not essential and runs the risk of suggesting that the trial judge has adopted the party's view. *See FDIC v. Schuchmann*, 235 F.3d 1217, 1222 (10th Cir. 2000) ("[I]t is not error to refuse to give a requested instruction if the same subject matter is adequately covered in the general instructions." (internal quotation marks omitted)).

*Townsend v. Lumbermens Mutual Casualty Co.*, 294 F.3d 1232, 1241 (10th Cir. 2002), is instructive. In that employment-discrimination case we reversed for

failure to instruct the jurors that they could reasonably infer discriminatory intent if they disbelieved an employer's proffer of an innocent explanation for an adverse employment action. Noting that appellate courts had struggled with whether such an inference is permissible, the panel observed: "This is a difficult matter for courts, and would certainly be difficult for a jury." *Id.* at 1241. Concurring, Judge Henry stated that he was persuaded that "absent the proposed instruction, jurors are left without adequate guidance as to the circumstances in which they may infer discriminatory intent." *Id*. at 1244 (Henry, J. concurring).

In this case the risk arising from omission of the proposed instruction is much less. The jury was instructed that "plaintiff must prove [that] . . . there exists a causal connection between [plaintiff's actions opposing discrimination] and the employer's [adverse] action." Aplt. App. at 311. The district court did not abuse its discretion in deciding that the jury would perceive, particularly if assisted by argument from Employer's counsel, that there could be no such causal connection unless Loritsch realized that Hertz had engaged in protected activity. We will not reverse on this ground.

## III. CONCLUSION

We AFFIRM the judgment below.