**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARK E. BROWN,

     Plaintiff - Appellant,

v.

KEYSTONE LEARNING SERVICES,

     Defendant - Appellee.

No. 19-3060
(D.C. No. 2:17-CV-02211-JAR)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **KELLY**, and **MATHESON**, Circuit Judges.
_____

In October 2015, Keystone Learning Services ("Keystone") hired Mark Brown as a substitute teacher to teach English to special education students. It terminated him in December 2015 when it hired a permanent teacher, and rehired him for a different substitute teacher position from January to May 2016. Keystone did not rehire Mr. Brown for the 2016-17 school year.

In April 2017, Mr. Brown sued Keystone for racial discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) *et seq.*, and 42

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

U.S.C. § 1981. The district court granted Keystone summary judgment and denied

his motion under Federal Rule of Civil Procedure 59(e). Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

A. *Factual Background*

### 1. The Parties and Keystone's Hiring Practices

Mr. Brown is licensed by Kansas to teach special education for grades 7 to 12.[1]

Keystone is a governmental entity that provides special education services, such as

hiring teachers for eight school districts in Kansas.[2] The John Dewey Learning

Academy ("JDLA") is Keystone's alternative school program.

During the time relevant to this appeal, Keystone advertised open positions by

(1) emailing current staff or (2) posting vacancies on the Kansas Teaching Jobs

("KTJ") website. App. at 13, 66, 77, 113.[3] If Keystone did not hire an applicant for

a position, it retained the application for approximately 18 months. *Id.* at 13, 113. If

Keystone hired an applicant, it removed that person from consideration for new

---

[1] He also is licensed to teach psychology (7-12), physical education (K-12), and health (K-12).

[2] The parties do not contest that Keystone is a state actor. Keystone is a local government unit under the Kansas Interlocal Cooperation Act. Kan. Stat. Ann. §§ 12-2901 *et seq* and 72-13,100.

[3] The Kansas Teaching Jobs website is "a place where any school district in the state of Kansas can post job openings." App. at 66.

positions.  *Id.*  A hired applicant needed to re-apply for any new full-time or substitute position.  *Id.*[4]

### 2. August 2015 – Mr. Brown's Initial Application

In August 2015, Mr. Brown applied for a full-time special education position (7-12) and a substitute teacher position (K-12).  In September 2015, Keystone Human Resources Manager Lushena Newman sent Mr. Brown the following letter:

> This is notification that the substitute teaching position for which you recently interviewed for has been filled. However, we will keep your application materials on file for future openings.

*Id.* at 98.

### 3. October to December 2015 Position

In October 2015, Keystone hired Mr. Brown as a "Substitute JDLA Special Education Teacher" at JDLA to teach English to special education students.  *Id.* at 73.  The written employment contract's start date was October 26, 2015, but the end date was unspecified.

In December 2015, Keystone hired a permanent teacher for Mr. Brown's position and informed him that his last day of employment would be December 17, 2015.  On December 29, 2015, Mr. Brown's legal counsel sent Keystone a letter asserting that "the only basis for terminating Mr. Brown's employment is lack of

---

[4] Keystone did not notify Mr. Brown that after he was hired in October 2015, he was removed from consideration for other positions.

3

funding," but Mr. Brown's "replace[ment] by another teacher[] . . . indicat[es] there is not a lack of funding." *Id.* at 86.

### 4. January to May 2016 Position

In January 2016, after meetings between legal counsel for Keystone and Mr. Brown, Keystone offered Mr. Brown another position. The written contract was for an at-will "Substitute JDLA Functional Special Education Teacher" position with a January 5, 2016 to May 25, 2016 term. *Id.* at 88.[5] Mr. Brown signed the contract and worked for the contract's full term.

### 5. April 2016 Conversation and Discontinued Employment

In an April 28, 2016 meeting,[6] JDLA Principal Terri Coughlin offered Mr. Brown a non-teaching paraprofessional position in both Keystone's summer 2016 "Harvester program" and for the 2016-17 school year. At the same meeting, Mr. Brown asked Principal Coughlin about teaching positions for the 2016-17 year, but she said "that she didn't have . . . teaching positions available for [him]." *Id.* at 67.[7]

---

[5] Although Mr. Brown did not apply for this position, Keystone claims it offered the position to Mr. Brown as part of a "negotiated settlement" for "conciliation." App. at 11. Mr. Brown disagrees, claiming he was offered the position because "[Keystone] had a position open due to staff changes." *Id.* at 112.

[6] In his EEOC charge and complaint in district court, Mr. Brown claimed they met on April 28, 2016. Keystone states that Principal Coughlin offered Mr. Brown a position "[a]t the end of the 2015-16 school year." App. at 12.

[7] Keystone does not dispute that Principal Coughlin made this statement. *See* Oral Arg. at 19:58-20:07.

On May 25, 2016, Mr. Brown's counsel sent Keystone a letter declining "a position for the 2016-2017 school year as a paraprofessional educator" and asking to renew Mr. Brown's October 26, 2015 contract. *Id.* at 95. The parties agree Mr. Brown rejected a paraprofessional position for the 2016-17 year, but Keystone disputes Mr. Brown's claim that he accepted the summer 2016 Harvester position.[8]

6. **Spring 2016 – Keystone's Hiring Actions**

In spring 2016, Ms. Newman sent the following emails to Keystone's special education teachers email group:

- An April 13, 2016 email listing available JDLA "Functional Skills Teacher" and JDLA "English Teacher" positions. *Id.* at 100. The email asked that "[i]f you have any interest in transferring[,] please notify me in writing." *Id.*

- A May 6, 2016 email showing an available JDLA "Functional Skills Teacher" position. *Id.* at 102.

- Two May 25, 2016 emails reporting no available JDLA positions.

On April 22, 2016 and April 29, 2016, Keystone also posted three open special education teacher positions at Keystone for the 2016-17 school year on the KTJ website.

---

[8] Mr. Brown claimed he received an email with a work schedule for the Harvester position but the record lacks other evidence that he accepted a position. When Mr. Brown showed up for his first day of work in the Harvester program, he was sent home. The parties dispute whether the summer Harvester and the 2016-17 position were the same or two separate positions. Mr. Brown claims they were two "separate and distinct" positions, and that his rejection of the paraprofessional position was not a rejection of the summer Harvester position. Aplt. Br. at 11. Keystone claims they were the same position, and thus asserts that Mr. Brown's counsel's May 2016 letter rejected Keystone's employment offer.

B. *Procedural Background*

1. **EEOC Charge**

In July 2016, Mr. Brown dual-filed a "Notice of Charge of Discrimination" with the Kansas Human Rights Commission ("KHRC") and Equal Employment Opportunity Commission ("EEOC"). He alleged improper conduct occurred from "April 28, 2016 to May 16, 2016," and described the factual basis for the charges as follows:

> I. I am African American. I have openly opposed acts and practices forbidden by the Kansas Act Against Discrimination [("KAAD")].
>
> II. I was employed by [Keystone] from October 26, 2015, to May 16, 2016. I last held the position of Teacher.
>
> > A. On April 28, 2016, I was denied a position for the 2016-2017 school years. However, on April 22, 2016 and April 29, 2016, [Keystone] posted several teaching positions for the 2016-2017 year.
> >
> > B. On May 16, 2016, I was terminated.
>
> III. I hereby charge [Keystone] with a violation of the [KAAD], in that I was denied a position due to my race, African American, and terminated as an act of retaliation for having openly opposed acts and practices forbidden by the [KAAD].

*Id.* at 108-09.

2. **District Court**

On April 10, 2017, after obtaining a right-to-sue letter, Mr. Brown sued Keystone for racial discrimination and retaliation in violation of Title VII and 42 U.S.C. § 1981.

a. *Pretrial order*

The magistrate judge issued a pretrial order stating Mr. Brown's racial discrimination claims and one retaliation claim were brought under Title VII and § 1981. The order referenced Mr. Brown's contentions that Keystone had discriminated against him because of his race in

> [(1)] termination of his employment in December 2015, and being required to sign a less favorable employment agreement in January 2016 in order to preserve his employment, [(2)] being denied employment for the 2016-2017 school year, and [(3)] being denied employment with the Keystone Harvesters program.

Dist. Ct. Doc. 33 at 5.

He also alleged

> that he was retaliated against for having opposed his termination from employment in December, 2015, in violation of [T]itle VII when he was denied employment opportunities with Keystone.

*Id.*

b. *Summary judgment*

Keystone moved for summary judgment on all claims. The district court granted the motion after analyzing the claims for (1) racial discrimination for the

December 2015 termination; (2) racial discrimination and retaliation for failure to hire Mr. Brown for the 2016-17 school year; and (3) racial discrimination for failure to hire Mr. Brown for the summer 2016 Harvester program. The court first addressed these claims under Title VII, and then addressed the same three claims under § 1981.

  i. <u>Title VII</u>

Under Title VII, the district court "easily [found]" that Mr. Brown had exhausted only his second claim—racial discrimination and retaliation for "failure to hire [Mr. Brown] for the 2016–17 school year." *Brown v. Keystone Learning Servs.*, No. 17-2211-JAR, 2018 WL 6042592, at *5 (D. Kan. Nov. 19, 2018) (unpublished). It dismissed the other claims for failure to exhaust and applied *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to the second claim only. *Id.* at *5-9. The court concluded Mr. Brown had failed to establish that Keystone's legitimate nondiscriminatory reason for its failure to hire him—that it hired only qualified teachers who applied for the 2016-17 academic year—was pretextual. *Id.* at *6-7. He failed to show that his pretext argument, based on Principal Coughlin's statement on April 28, 2016 that no 2016-17 positions were available, was "false at the time it was made" or an "intentional[] misrepresent[ation]." *Id.* at *7.

The district court also concluded Mr. Brown could not establish a prima facie

case of retaliation because he did not engage in "protected opposition" to the

December 2015 termination. *Id.* at *8.[9]

      ii.  <u>Section 1981 claims</u>

Under § 1981, the district court granted Keystone summary judgment on three

grounds. First, § 1981 claims against a state actor such as Keystone must be brought

under 42 U.S.C. § 1983, and Mr. Brown had not done so.[10] Second, to prove a

§ 1983 claim against a municipal defendant like Keystone, the plaintiff must show

the municipality's policy or custom caused the § 1981 violation, and Mr. Brown

failed to do so.[11] Third, the second § 1981 claim failed for the same reasons as the

second Title VII claim.

      c.  *Denial of Mr. Brown's motion to alter or amend*

Mr. Brown filed a motion under Federal Rule of Civil Procedure Rule 59(e) to

alter or amend the judgment, arguing he had established pretext for his Title VII

---

[9] The district court further determined that Mr. Brown lacked evidence of a causal connection between the "allegedly protected activity" in December 2015 and Keystone's "decision not to hire him as a teacher for the [2016-17] year." *Brown*, 2018 WL 6042592, at *8-*9. Finally, it held that Mr. Brown could not establish pretext. *Id.* at *9.

[10] *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) (explaining 42 U.S.C. § 1983 provides "the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor").

[11] *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694-95 (1978) (explaining municipal liability arises only if the "government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983").

racial discrimination claim. The motion attached a new affidavit from Mr. Brown and screenshots of the KTJ website as it appeared on April 22 and April 29.

The district court denied the motion. *See Brown v. Keystone Learning Servs.*, No. 17-2211-JAR, 2019 WL 858694, at *3 (D. Kan. Mar. 25, 2019) (unpublished). It "decline[d] to consider" as evidence Mr. Brown's "new facts and citations" because Mr. Brown could have presented them in his brief opposing summary judgment. *Id.* at *2.

## II. **DISCUSSION**

We affirm the district court on all claims. The following discussion focuses mainly on Mr. Brown's Title VII claim for race discrimination and retaliation based on Keystone's failure to hire him for the 2016-17 school year. We summarily affirm his remaining claims under Title VII and § 1981. Finally, we affirm the district court's denial of Mr. Brown's Rule 59(e) motion because Mr. Brown tried to offer evidence he could have presented at summary judgment.

### A. *Standard of Review*

"We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court." *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017) (quotations omitted). "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Id.* (quotations omitted). "The court shall grant summary judgment if the movant shows that there is

10

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

B. ***Title VII Race and Retaliation Claim for Failure to Hire for 2016-17***

1. **Racial Discrimination**

a. *Legal background*

Title VII prohibits an employer from "refus[ing] to hire . . . any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). "To survive summary judgment on a Title VII claim of [racial] discrimination," the plaintiff must "present either direct evidence of discrimination or indirect evidence that satisfies the burden-shifting framework of *McDonnell Douglas*." *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019).[12] The plaintiff bears "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Under the three-part *McDonnell Douglas* burden-shifting framework, the plaintiff first bears the "not onerous" "burden of proving by the preponderance of the evidence a prima facie case of discrimination." *Id*. at 252-53.[13] If the plaintiff meets

---

[12] "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption. Stated differently, direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (quotations, citations, and brackets omitted).

[13] To establish a prima facie failure-to-hire claim, "[t]he plaintiff must show: (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job

11

the prima facie burden, the employer bears the "exceedingly light" burden to "articulate a legitimate, nondiscriminatory reason" for not hiring the plaintiff. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (quotations omitted). The employer's explanation must be "legally sufficient to justify a judgment for the defendant" by "clearly set[ting] forth . . . admissible evidence." *Burdine*, 450 U.S. at 255; *see also DePaula*, 859 F.3d at 973 (explaining defendant recounted plaintiff's performance issues in termination letter). "If the defendant articulates a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether the defendant's reason . . . is pretextual." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017) (quotations omitted).

On appeal, the parties address the pretext step. A plaintiff may show pretext "indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256; *see also Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (quotations omitted) (explaining a plaintiff may show pretext by demonstrating "weaknesses . . . or contradictions in the employer's proffered legitimate reasons" such "that a reasonable factfinder could rationally find them unworthy of credence").

---

for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Burdine*, 450 U.S. at 253 n.6 (quotations omitted).

12

In evaluating a plaintiff's evidence of pretext, courts "examine the facts as they appear to the person making the decision," not "the plaintiff's subjective evaluation." *DePaula*, 859 F.3d at 970 (quotations omitted). Courts "may not second guess the [employer's] business judgment," but must ask "whether the employer honestly believed those reasons and acted in good faith upon those beliefs." *Id.* at 970-71 (quotations omitted).

b. *Analysis*

Because Mr. Brown has offered no direct evidence to prove discrimination "without inference or presumption," *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007), like the district court, we apply the *McDonnell Douglas* burden-shifting framework.

On appeal, Keystone does not contest that Mr. Brown established a prima facie case. Aplee. Br. at 32-33. Mr. Brown does not contest that Keystone provided a legitimate, nondiscriminatory reason, *see* Aplt. Br. at 28: that "[Keystone] selected and hired teachers for the 2016-17 school year from the individuals who actually applied and were qualified for those positions," App. at 25. Instead, Mr. Brown challenges the district court's determination that his evidence was "insufficient to demonstrate pretext." Aplt. Br. at 26.

Mr. Brown must carry his burden to show pretext. *See Dewitt*, 845 F.3d at 1308. His primary evidence is Principal Coughlin's statement on April 28, 2016, "that she didn't have . . . teaching positions available for [him]." App. at 67. He

13

contends this statement was "false" and that she "had reason to know that her statement was false." Aplt. Br. at 31. But even if a reasonable jury could infer her statement was incorrect,[14] it does not undermine Keystone's legitimate, nondiscriminatory reason for not hiring Mr. Brown for 2016-17—that it hired only those who applied and were qualified. Principal Coughlin's statement did not address whether Mr. Brown applied or was qualified. It therefore did not demonstrate "weaknesses . . . or contradictions in [Keystone's] proffered reasons," such that a "reasonable [jury] could rationally find them unworthy of credence." *Swackhammer*, 493 F.3d at 1167.

Apart from relying on Principal Coughlin's statement, Mr. Brown attempts to show he applied for 2016-17 positions. First, Mr. Brown claims Ms. Newman's September 2015 letter about keeping his August 2015 application on file meant he would be considered for future openings. But under Keystone's practices, once he was hired in October 2015 and rehired in January 2016, he needed to apply for any new position. Second, he contends he did not receive Ms. Newman's spring emails notifying interested employees to apply for open 2016-17 positions. But whether he received the emails does not change the fact that Keystone did not receive an

---

[14] A reasonable jury could infer that Keystone had 2016-17 positions available on April 28, 2016. Ms. Newman's April 13 and May 6 emails show an open JDLA "Functional Skills Teacher" position. App. at 100, 102. Ms. Newman's April 13 email shows an open "JDLA English Teacher position," although it was not listed in her May 6 email. *Id.* On April 22 and April 29, 2016, Keystone also posted three 2016-17 year special education teacher positions on the KTJ website.

14

application from him, and we examine the facts as they appeared to Keystone. *See*

*DePaula*, 859 F.3d at 970-71.[15]  Third, Mr. Brown points to his expression of interest

in 2016-17 positions during his April 28, 2016 meeting with Principal Coughlin.  But

this does not show he applied.  Fourth, Mr. Brown argues he accepted the summer

paraprofessional Harvester position and received an email with a work schedule.  But

this was not a teaching position and did not extend to the 2016-17 school year.  And

although Mr. Brown's counsel's May 25, 2016 letter to Keystone inquired about

renewing his contract for 2016-17, Keystone "understood from [the] letter that [he]

would not accept any position other than the substitute teaching position he held the

previous year."  Aplee. Br. at 6.  In sum, the record lacks evidence that he applied for

or was offered a teaching position for the 2016-17 year.[16]

\* \* \* \*

Even if Mr. Brown raised an issue of fact regarding the accuracy of Principal

Coughlin's statement, no reasonable jury could infer that the statement undermined

Keystone's reasons for failing to hire him for the 2016-17 year.

---

[15] Principal Coughlin's statement about no available positions and Mr. Brown's contention that he did not receive Ms. Newman's emails may raise a question whether Keystone attempted to impede Mr. Brown's opportunity to apply for 2016-17 positions.  But Mr. Brown has not relied on that basis for his claim or presented evidence to support it, and Keystone thus has not attempted to discredit it.

[16] Because Mr. Brown fails to show as pretextual Keystone's reason that he failed to apply for 2016-17 positions, we do not address Keystone's other reason that he was unqualified.

15

2. **Retaliation**

   a. *Legal background*

   Title VII prohibits an employer from "discriminat[ing] against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). To survive summary judgment on a Title VII retaliation claim, a plaintiff must either directly "show that retaliatory animus played a 'motivating part' in the employment decision," or "rely on the [*McDonnell Douglas*] burden-shifting framework . . . to prove retaliation indirectly." *Parker Excavating*, *Inc.*, 863 F.3d at 1220.

   Under the *McDonnell Douglas* framework, a plaintiff establishes a prima facie case of retaliation by showing (1) the plaintiff engaged in "opposition to racial discrimination that is protected under the statute," (2) "a reasonable person would have found the challenged action materially adverse," and (3) "a causal connection existed between the protected activity and the adverse action." *Id.* "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008). A plaintiff's "[p]rotected opposition can range from filing formal charges to voicing informal complaints to superiors." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004).

16

Once the plaintiff establishes a prima facie case, "the alleged retaliator [may] offer a legitimate, nonretaliatory reason for its conduct." *Parker Excavating*, *Inc.*, 863 F.3d at 1220. If satisfied, "the plaintiff must show the employer's reason was merely a pretext for retaliation." *Id.*

b. *Analysis*

Mr. Brown claims that Keystone failed to hire him for the 2016-17 year in retaliation for his "protected opposition" to his December 2015 termination. Because he offers no direct evidence that retaliatory animus motivated Keystone's employment decision, we analyze his retaliation claim under the *McDonnell Douglas* burden-shifting framework. *See id.*

Mr. Brown has failed to demonstrate a prima facie case. His sole action in response to his December 2015 termination was his counsel's December 29, 2015 letter. This letter was not "protected opposition." It did not "convey to [Keystone] . . . that [it] ha[d] engaged in a practice" violating Title VII. *Hinds*, 523 F.3d at 1203. The letter did not mention or imply racial discrimination. Nor did Mr. Brown "fil[e] formal charges" or "voic[e] informal complaints" that his December 2015 termination was racially discriminatory. *Hertz*, 370 F.3d at 1015. Summary judgment was therefore appropriate.[17]

_____

[17] On appeal, Mr. Brown appears to raise a second retaliation claim: that Keystone made his January 5, 2016 to May 25, 2016 contract less favorable than his October 2015 contract in retaliation for his December 2015 opposition. Keystone contends this claim was not preserved and is without merit because he never engaged

C. *Remaining Claims*

We affirm the district court on Mr. Brown's remaining claims. Mr. Brown failed to exhaust his other Title VII claims and failed to plead his § 1981 claims under § 1983.

1. **Title VII – Failure to Exhaust**

To bring a Title VII claim, a plaintiff must file a charge of discrimination with either the EEOC or an authorized state or local agency and receive a right to sue letter. *See* 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1). "Each incident of discriminatory or retaliatory treatment . . . must be exhausted," *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018) (quotations and brackets omitted), meaning "the charge must contain facts . . . underlying each claim," *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (quotations and brackets omitted). A plaintiff's failure to exhaust administrative remedies is not a jurisdictional bar. *See Lincoln*, 900 F.3d at 1183. It "permits a defendant only an affirmative defense . . . subject to waiver, estoppel, and equitable tolling." *Id.* "We review the district court's legal determination that a plaintiff has failed to exhaust her administrative remedies de novo." *Cheyenne*, 904 F.3d at 1164.

---

in protected activity. Without deciding whether this claim was properly preserved, we find it meritless because Mr. Brown failed to show his December 2015 actions were "protected opposition."

18

Although Mr. Brown timely filed his EEOC and KHRC charge and received a right to sue letter from the EEOC, he failed to exhaust "each discrete incident of discriminatory or retaliatory treatment." *Lincoln*, 900 F.3d at 1181 (quotations and brackets omitted). His EEOC/KHRC charge "contain[ed] facts . . . underlying" his claim about Keystone's failure to hire him for the 2016-17 year. *Cheyenne*, 904 F.3d at 1164 (quotations omitted). It listed the dates of the incident as "April 28, 2016 to May 16, 2016" and stated he "was denied a position for the 2016-2017 school years." App. at 108. But the EEOC/KHRC charge lacked facts underlying his other claims. We therefore affirm the district court's determination that only his 2016-17 failure-to-hire claim was properly exhausted under Title VII.[18]

## 2. Section 1981 – Failure to Plead § 1983

Title 42 U.S.C. § 1983 provides "the exclusive federal . . . remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). The district court dismissed Mr. Brown's § 1981 claims because he failed to plead them under § 1983.

On appeal, Mr. Brown argues that the amendments to § 1981 in the Civil Rights Act of 1991 permit him to bring his § 1981 claims without alleging them under § 1983. *See* Aplt. Br. at 17-18 (asserting that § 1981 "has its own standard for

---

[18] Keystone raised its affirmative defense of non-exhaustion regarding the other claims in its August 7, 2017 answer to Mr. Brown's complaint and the pretrial order.

liability and remedies" which "do[] not require a Plaintiff to defer to § 1983

remedies").[19] But we have held the amendments did not alter *Jett's* holding that

§ 1983 is the "exclusive federal remedy" for § 1981 actions against state actors.

*Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1136-37 (10th Cir. 2006) (quotations

omitted) ("The amendments to § 1981 . . . hardly confront[] the holding in *Jett*.").

We therefore affirm the district court's determination that Mr. Brown's § 1981 claims

must be dismissed.[20]

### D. *Rule 59(e) Motion*

"We review the [district court's] denial of a Rule 59(e) motion to alter or

amend a judgment for abuse of discretion." *Monge v. RG Petro-Machinery (Grp.)*

*Co. Ltd.*, 701 F.3d 598, 610 (10th Cir. 2012) (citing Fed. R. Civ. P. Rule 59(e)). "To

support a Rule 59(e) motion with additional evidence . . . the moving party must

show (1) that the evidence is newly discovered, or (2) if the evidence was available at

the time summary judgment was granted, that counsel made a diligent yet

unsuccessful attempt to discover the evidence." *Id.* at 611 (quotations omitted).

The district court's refusal to consider Mr. Brown's additional evidence

attached to his Rule 59(e) motion—(1) his affidavit and (2) Keystone's April 22,

---

[19] Mr. Brown asserts he does not seek to amend the complaint to bring his § 1981 claims under § 1983. *See* Oral Arg. at 00:49-52.

[20] Even if Mr. Brown had properly brought his § 1981 claim under § 1983, he does not contest the district court's finding that he failed to show Keystone had a municipal policy or practice that caused his alleged violation.

20

2016 and April 29, 2016 job postings on the KTJ website—was not an abuse of discretion.[21]  Mr. Brown has not shown this evidence was "newly discovered" or that his counsel made a "diligent yet unsuccessful attempt" to discover the evidence.  *Id.*  We affirm the district court's denial of the Rule 59(e) motion.

### III.  **CONCLUSION**

We affirm the district court's summary judgment for Keystone and denial of Mr. Brown's Rule 59(e) motion.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

---

[21] In his EEOC charge, *see* App. at 108, and in his complaint, *see* Dist. Ct. Doc. 2 at 4, Mr. Brown stated that Keystone placed job postings online on April 22 and April 29, 2016.  Ms. Newman's deposition testimony also identified the substantive information contained within the job postings on the KTJ website.  The exclusion of the job postings as evidence does not preclude our consideration of their existence in considering Mr. Brown's pretext evidence.